## CUSHING BRYANT *et al. versus* THE OCEAN INSURANCE COMPANY.

A statement made by the assured at the time of procuring the insurance, as to his intentions merely, does not amount to a representation, and wil not affect the pol icy, unless such statement was made fraudulently.

Thus, where at the time of effecting insurance on a vessel, the assured wrote to the underwriter, that he was taking in paving stones for ballast and should fill up the vessel with hay for New Orleans, but instead thereof he put in a cargo of paving stones without hay, thereby increasing the perils of the voyage, it was *held*, that as the letter was a statement of the *intentions* merely of the assured, the policy was not, in the absence of fraud, rendered void, there being no evidence that the assured was not, at the time, taking in paving stones as represented, or that he did not intend to take in a cargo of hay; that it was not material, that there were other statements in the letter amounting strictly to a *representation,* and that the whole was understood to be such by the underwriters ; and that such letter was inadmissible in evidence for the purpose of proving an agreement of the parties not embraced in the policy, and thereby limiting its effect.

THIS was an action on a policy of insurance dated on the 10th of January, 1837, whereby the defendants caused the plaintiffs to be insured the sum of $ 9000 on the brig Hope, for one year, to all ports and places.

The trial was before *Shaw* C. J.

It appeared that the brig, which was a new vessel, sailed, after the policy attached, from Damariscotta for New Orleans, and was totally lost and abandoned at sea in March, 1837.

The defence relied on was, that prior to and at the time of effecting the insurance, Cushing Bryant, who acted as agent of the plaintiffs for this purpose, made a representation in a letter to the defendants, that he was taking in paving stones for bal last and should fill up with hay, and send the vessel to New Orleans, from which place she would go into the usual freight ing business ; but that instead of ballasting the vessel with pa ving stones and filling her up with a cargo of hay, the owners had put in a cargo of paving stones without hay, which was a much heavier and more perilous cargo, especially for a new vessel, and increased the risk.

The plaintiffs objected to the admission of the evidence of these facts, on the following grounds :

1. That it was an attempt to control and alter the terms of the policy, by evidence of proposals and negotiations which

preceded it, and which were all embraced in the terms of the contract itself; and that there being a stipulation in the policy to cover the vessel to all ports and places with any lawful cargo, it could not be restrained by a previous proposal, to a particular employment. 2. That as a representation, it did not relate to any existing fact, but as to what was intended to be done, and could not be deemed false and fraudulent, unless made with a fraudulent intent to mislead the defendants.

It was admitted by the defendants, that they did not expect to prove, that at the time when the representation was made, the plaintiffs had actually laden a cargo of paving stones on board the brig, or that there was a fraudulent intent on the part of the plaintiffs to deceive them; but they insisted, that they relied upon the representation, and had a right so to do, so that without it they would not have taken the risk, or not at the same premium, and that they were not bound by their contract unless the plaintiffs made such representation good.

Whereupon it was ruled, that the evidence offered was not admissible for any other purpose than to prove a fraudulent intent on the part of the insured to mislead the defendants and to induce them to take the risk, or to take it at a lower premium than they otherwise would have done; that as a representation, not of a fact, but of an intention, it did not avoid the policy, unless made with a fraudulent intent; that as it related solely to the employment of the vessel within the time for which she was insured, it was not of an independent or collateral fact affecting the risk, but was embraced in the terms of the contract, and must be considered as absorbed in the contract afterwards formally executed, or as by mutual consent withdrawn and waived by the execution of the policy.

Whereupon the defendants consented to be defaulted, the default to be subject to the opinion of the whole Court.

If the Court should be of opinion, that the evidence ought to have been admitted for the purpose for which it was offered, the default was to be taken off and a new trial granted; otherwise the default was to stand.

*Peabody*, for the defendants, cited *Edwards* v. *Footner*, 1 Campb. 530; *Chaurand* v. *Angerstein*, Peake's Cas. 43; 3 Kent's Comm. (3d edit.) 283, 286; *M'Lanahan* v. *Univer-*

Bryant
v.
Ocean
Ins. Co.

*sal Ins. Co.* 1 Peters's Sup. Court R. 170 ; *Watson v. Delafield,* 2 Caines's R. 224 ; *S. C.* 2 J hns. R. 526 ; Hughes on Ins. 345 to 356 ; *Gladstone v. King,* 1 Maule & Selw. 35 ; *Fitzherbert v. Mather,* 1 T. R. 12 ; *Kirby v. Smith,* 1 Barn. & Ald. 672 ; *Berthon v. Loughman,* 2 Starkie's R. 258 ; *Vandervoort v. Smith,* 2 Caines's R. 155 ; *Macdowall v. Fraser,* 1 Dougl. 260 ; *Vandenheuvel v. United Ins. Co.* 2 Johns. Cas. 451 ; *Reid v. Harvey,* 4 Dow, 97 ; *Wolcott v. Eagle Ins. Co.* 4 Pick. 429 ; *Allegre v. Maryland Ins. Co.* 2 Gill & Johns. 136 ; *S. C.* 6 Harr. & Johns. 408 ; 2 Kent's Comm. (3d ed.) 488, note.

*C. G. Loring* and *F. C. Loring,* for the plaintiffs. The policy in itself would cover this risk ; and as the evidence offered was in some degree inconsistent with it, and limited its effect, it was inadmissible. 3 Stark. on Evid. 1007 ; *Kaines v. Knightly,* Skinner, 54 ; *Parks v. General Interest Ins. Co.,* 5 Pick. 37 ; *Weston v. Emes,* 1 Taunt. 115 ; *Creery v. Holly,* 14 Wendell, 26 ; *Dawson v. Atty,* 7 East, 367 ; *Blackett v. Royal Exch. Ass. Co.* 2 Crompt. & Jervis, 244 ; *Rice v. New Eng. Ins. Co.* 4 Pick. 442 ; *Vandervort v. Columbian Ins. Co.* 2 Caines's R. 155 ; No. 43 Law Magazine, 91, note · *Whitney v. Haven,* 13 Mass. R. 172.

There was no representation made here, in the legal sense of the word. A representation must be of something collateral to the contract, and must not make a part of it. It must be of or concerning some *fact,* something *done* or *past,* and exclude *expectations* of things that *are to be.* In the present case the vessel was not loaded when the alleged representation was made. We admit, if Bryant was not taking in paving stones for ballast, that the plaintiffs are not entitled to recover. *Rice v. New Eng. Ins. Co.* 4 Pick. 439 ; *Bowden v. Vaughan,* 10 East, 415 ; *Flinn v. Tobin,* 1 Moody & Malk. 367 ; *Flinn v Headlam,* 9 Barn. & Cressw. 693 ; 1 Phill. on Ins. 80 ; *Hubbard v. Glover,* 3 Campb. 312 ; *Hubbard v. Coolidge,* 2 Gallis. 358 ; *Lavabre v. Wilson,* 1 Dougl. 289.

WILDE J. delivered the opinion of the Court. The sole question in this case is, whether there was any such misrepresentation made to the defendants by one of the plaintiffs, in his application for insurance, as will by law avoid the policy.

The defendants offered to prove, that prior to, and at the time of making the insurance, Cushing Bryant, who acted as agent for the other plaintiffs, made a representation to the defendants, that he was then taking in paving stones for ballast, and should fill up with hay for New Orleans ; but that in fact a full cargo of paving stones was taken in, whereby the perils of the voyage were increased. No evidence was offered to show that at the time the representation was made the plaintiffs were not taking in paving stones as represented, or that the plaintiffs did not then expect or intend to take in a cargo of hay. The defendants' counsel admitted, that they did not expect to prove that a cargo of stones was then laden on board the vessel ; nor did they expect to prove any fraudulent intent on the part of the plaintiffs, to deceive them. But the argument then was, and still is, that the defendants relied on the representation, and that the plaintiffs were bound to make it good. It was thereupon ruled, that the representation, not of a fact, but of an intention, would not avoid the policy, unless made with a fraudulent intent.

It has been argued that a misrepresentation will avoid a policy, whether made with a fraudulent design, or by mistake or negligence, as the insurer is thereby led into an error, and computes the risk upon false grounds. This is undoubtedly true as to all facts represented ; and so if facts material to the risk, and which the assured were bound to disclose, are, by mistake or negligence, not disclosed, the omission though not fraudulent would avoid the policy. And on this ground there is no doubt, that if the defendants could have proved that, at the time the representation was made, the plaintiffs had no intention to take in a cargo of hay, such a false representation would avoid the policy. Indeed if they had no such intention it would have been a fraudulent misrepresentation. That was a question of fact for the jury to decide, if the defendants had inclined to submit it to their decision. But no representation of a party's expectation or belief, unless fraudulently made, will avoid a policy. Nor is there any distinction between a party's expectation, and intention, as to any matter relating to the voyage.

In *Bize* v. *Fletcher*, 1 Dougl. 287, it appeared, that at the

time the policy was subscribed, there was a slip of paper wafered to it, and shown to the underwriters, on which was written the following representation; " The ship has had a complete repair, and is now a fine and good vessel. Intends to sail in September or October next. Is to go to Madeira, the Isles of France, Pondicherry, China, the Isles of France, and L'Orient." The ship did not sail till the 6th of December, and when she left Pondicherry, instead of proceeding to China, she sailed for Bengal. In regard to this representation Lord *Mansfield* instructed the jury, " that, if they were satisfied that the real intention at the time of the representation was to go to China, the plaintiff would be entitled to their verdict ; for that the insured might change the intention, and go to Bengal, and yet be protected by the policy, being expressed in different and much more comprehensive terms."

The cases cited by the defendants' counsel relative to the expectation of sailing with convoy, were decided on grounds not inconsistent with the doctrine laid down by Lord *Mansfield*.

The defendants' counsel have endeavoured to distinguish the case under consideration from that of *Bize* v. *Fletcher* and some of the other cases cited. In those cases, it is said, the events expected were prevented by necessity, or were not within the control of the assured ; whereas, in the present case, the plaintiffs might have well carried their declared intention into effect, for aught that appears to the contrary, if they had seen fit so to do. But we do not consider this as a sound distinction. No doubt circumstances may be supposed that might justify a jury in finding that the plaintiffs' declared intention was a mere pretence, and that they in fact had no such intention. But if the intention was real, and they had a right to change their intention, there is no evidence to prove that they did not act with good faith.

If the evidence offered was intended to prove an agreement or promise not embraced in the policy, it was clearly inadmissible.

It is a familiar principle of the law of insurance, that a representation is no part of the policy. It is a collateral statement of facts or circumstances relative to the proposed adventure, which may be an inducement to the contract, but is not

inserted in the policy. It is said truly, that if information be stated as mere opinion, expectation or intention, it does not amount to a representation. The information of the plaintiffs' intention as to the nature of the cargo, was contained in a letter to the defendants, in which other facts were stated amounting strictly to a representation. The whole was intended as such, and must have been so understood by the defendants. But this is not material ; for if the information of the plaintiffs' expectation and intention is strictly no part of the representation, it is clearly no part of the policy, and cannot avail the defendants in any manner.

It is admitted, that by the principles of the common law this evidence could not be admitted, but in respect to contracts of insurance it is contended, that a more liberal rule of evidence should be applied. We think there is no ground for this distinction. The reason of the rule applies to contracts of insurance, as well as to other contracts. The written contract is the best evidence of the understanding and intention of the parties. A representation or other parol evidence is admissible to explain a latent ambiguity, or to prove a usage which may affect the policy ; but the like evidence is admissible in explanation of other written contracts. A case is cited 1 Marshall, (3d edit.) 352, where on insurance from Archangel to the Downs, and thence to Leghorn, with a parol agreement that the policy should not attach till a certain period, it was held, that the plaintiff could not recover in contravention of the parol agreement. In *Weston* v. *Emes*, 1 Taunt. 115, the court held, that this case could not be law, and expressed their opinion that it could not have been so decided.

But if the parol evidence were admissible, it could not sustain the defence. It would only prove the declaration of an intention of the plaintiffs previous to the policy, and as it was not afterwards inserted in the policy the defendants must be presumed to have taken upon themselves the risk of any change of intention ; otherwise they would have required a warranty.

In *Whitney* v. *Haven*, 13 Mass. R. 172, it was proved by the broker, that the plaintiff declared, at the time of effecting the policy, that the vessel was to sail within five days, and that the defendant said that his name should be taken off the policy,

or that he would not be bound, if she did not then sail. She did not sail within the five days ; and the delay was relied upon as a sufficient defence. But the Court decided, that the defendant could not avail himself of it, not because the delay was justified by the apprehended danger of capture, but because the stipulation was no part of the written contract ; and that parol evidence was not sufficient to give it effect. This was evidently considered by the Court as quite clear , and we are all of the same opinion.

We are therefore of opinion, that the evidence offered in defence was not admissible, and that the ruling of the court at the trial was, in all respects, correct.

*Motion for a new trial overruled.*